## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                     )

**ATAIN SPECIALTY INSURANCE CO.,**     )

                                       )

            **Plaintiff,**                 )

                                       )            **Civil Action No.**

        **v.**                      )            **18-10530-FDS**

                                         )

**BOSTON RICKSHAW LLC,**            )

**DENNIS SUOZZI,**                    )

**LAURA GENTRY REAGAN, and**     )

**ROBERT REAGAN,**                  )

                                       )

            **Defendants.**             )

_____)

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
## FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, J.**

This is an action for declaratory judgment concerning the existence of insurance coverage.  Plaintiff Atain Specialty Insurance Company seeks a declaration that it has no duty to defend or indemnify defendants Boston Rickshaw LLC and Dennis Suozzi in an action brought by Laura Gentry Reagan and Robert Reagan in state court.

Atain has filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).  For the following reasons, the motion will be granted.

**I.**       **Background**

       **A.**       **Factual Background**

            **1.**       **The Underlying Action**

The following facts appear as alleged in the Reagans' complaint in the underlying state action.  *See Laura Gentry Reagan and Robert Reagan v. Dennis Suozzi and Boston Rickshaw*

*LLC*, No. 1684-cv-02697 (Mass. Super. Ct.).

On September 8, 2013, Laura Gentry Reagan and her husband Robert Reagan entered a pedicab on Charles Street in Boston, Massachusetts.  (Underlying Comp. ¶ 15).  The pedicab was licensed and registered to Boston Rickshaw LLC and was operated by Dennis Suozzi, an employee of Boston Rickshaw.  (*Id.* ¶ 8-9).

During the Reagans' ride, Suozzi allegedly changed lanes "into the path of an unknown vehicle" without looking to see whether the "lane was open" and without signaling properly.  (*Id.* ¶ 17-20).  The lane change allegedly caused the vehicle traveling behind Suozzi to strike the rear of  his pedicab.  (*Id.* ¶ 17).  The Reagans contend that they suffered serious injuries as a result of the collision.  (*Id* ¶ 23).  Their complaint alleges claims of negligence against both Suozzi and Boston Rickshaw.

### 2.    **Insurance Policy**

Atain issued a Commercial General Liability policy to Boston Rickshaw for the period from April 5, 2013, to April 5, 2014.

The policy contained a number of exclusions, which provided that the policy's "insurance [did] not apply to" various categories of injuries.  (Policy at 33).  Exclusion (g), in its original form, was titled "Aircraft, Auto or Watercraft," and provided that insurance did not apply to:

> 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and 'loading or unloading.'

> This exclusion applies even if the claims against any insured alleged negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved by the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft that is owned or operated by or rented or loaned to any insured.

(*Id.* at 35).  The policy defined an "auto" as either "[a] land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged."  (*Id.* at 43).

However, the policy also had a number of endorsements that "change[d] the policy."  (*Id.* at 15).  One of those endorsements, entitled "AMENDMENT – AIRCRAFT, AUTO OR WATERCRAFT EXCLUSION," deleted the original Exclusion (g) and replaced it with the following language:

> g.      Aircraft, Auto Or Watercraft
>
> This insurance does not apply to:
>
> (1)      "Bodily injury" or "property damage" arising out of or in connection with any aircraft or watercraft unless outlined below;
>
> (2)      "Bodily injury" or "property damage" arising out of or in connection with any "auto" unless as outlined below; or
>
> (3)      The "loading or unloading" of any aircraft, "auto" or watercraft by any insured.
>
> This exclusion applies to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, entrustment, permitting, training or monitoring of others by an insured.
>
> This exclusion applies even if the claims against any insured allege direct or vicarious liability.

(*Id.* at 15).

## B.      Procedural History

The Reagans filed their complaint in the underlying state civil action on August 30, 2016.

Atain filed this declaratory judgment action on March 20, 2018.  Atain has moved for judgment

on the pleadings, contending that it has no duty to defend or indemnify defendants.

## II.    Analysis

### A.    Ripeness

As a preliminary matter, the Reagans contend that Atain's claim for a declaratory

judgment is not yet ripe.  In support of that contention, they cite opinions from the Middle

District of Florida and the Southern District of Alabama for the proposition that "[a]n insurer's

duty to indemnify is not ripe for adjudication unless and until the insured or putative insured has

been held liable in the underlying action."  *Pa. Nat'l Mut. Cas. Ins. Co. v. King*, 2012 WL

280656 at *5 (S.D. Ala. January 30, 2012); *see also Atain Specialty Ins. Co. v. Sanchez*, 2018

WL 1991937 at *1 (M.D. Fla. April 27, 2018).[1]

It is true that courts frequently hold that an insurer's duty to indemnify does not become

ripe for adjudication until the underlying lawsuit for liability is resolved.  *See, e.g., Mid-*

*Continent Casualty Company v. Delacruz Drywall Plastering & Stucco, Inc.*, 2019 WL 1093211

(11th Cir. Mar. 8, 2019).  The same is not true, however, for an insurer's duty to defend.  Indeed,

courts routinely consider an insurer's duty to defend ripe for adjudication while the underlying

lawsuit for liability is still pending.  *See, e.g., Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp.

3d 364, 372 (D. Mass. 2015) (finding the question of whether an insured owed a duty to defend,

but not the question of whether it owed a duty to indemnify, ripe for adjudication before liability

had been determined in underlying action); *see also* 16 *Couch on Insurance 3d* § 227:29

---

[1] The Reagans also appear to contend that Atain's motion is not yet ripe because "discovery has not been completed."  (Def. Mem. at 5).  But because an insurer's duty to defend is determined by whether "the allegations in the underlying lawsuit are reasonably susceptible to an interpretation that they state a claim covered by [the] policy," the court need not consider anything beyond the complaint in the underlying lawsuit, other than the language of the policy, which has been attached as an exhibit to the complaint in this case.  *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009).

("[W]hether an insurer has a duty to defend a suit against its insured is generally considered a controversy ripe for declaratory relief, even when the issue of the insurer's actual liability in the underlying suit may not be considered until after a resolution of that suit.").

It appears, therefore, that even if the question of the duty to indemnify is not yet ripe for adjudication, the question of the duty to defend is.  Under Massachusetts law, "[i]f an insurer has no duty to defend, based on the allegation in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify."  *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 459 (1999).  Accordingly, the Court will consider whether Atain has a duty to defend Suozzi or Boston Rickshaw.

### B.     Construction of the Exclusion

The scope of the dispute here depends entirely on whether the Reagans suffered a bodily injury "arising out of . . . any auto."[2]

In Massachusetts, the interpretation of an insurance contract is generally a question of law.  *Home Ins. Co. v. Liberty Mut. Fire Ins. Co.*, 444 Mass. 599, 601 (2005).  Courts are to "construe the words of the policy according to the fair meaning of the language used, as applied to the subject matter."  *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 76 (1994) (citation omitted).  "Moreover, where the words of an insurance contract are plain and free from ambiguity[,] they must be construed in their usual and ordinary sense."  *Id.* at 77 (internal quotation marks and citation omitted).  Any ambiguity is to be resolved in favor of the insured party.  *Hazen Paper Co. v. U.S. Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990).  "Ambiguity exists when the policy language is susceptible to more than one rational interpretation."  *Brazas*

---

[2] The awkward phrasing is taken directly from new Exclusion (g), which provides that the insurance does not apply to "'bodily injury' . . . arising out of or in connection with any 'auto.'"

5

*Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 4-5 (1st Cir. 2000).

Generally, an insurance company "owes a duty to defend [the insured] if the allegations in the underlying lawsuit are reasonably susceptible to an interpretation that they state a claim covered by [the] policy." *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009). "Conversely, there is no duty to defend a claim that is excluded from coverage." *Id.* However, exclusions are to be read narrowly, and the insurer bears the burden of establishing that an exclusion applies. *Peterborough Oil Co., Inc. v. Great Am. Ins. Co.*, 397 F. Supp. 2d 230, 237 (D. Mass. 2005).

Under Massachusetts law, "[t]he phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law." *Finn v. Nat. Union Fire Ins. Co. of Pittsburgh, Pa.*, 452 Mass. 690, 697 (2008) (quoting *Bagley*, 430 Mass. at 457). "Indeed, cases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation, in which the court examining the exclusion inquires whether there would have been personal injuries, and a basis for the plaintiff's suit, in the absence of the objectional underlying conduct." *Bagley*, 430 Mass. at 457.

Exclusion (g), therefore, appears to apply to the Reagans' alleged injuries, because the injuries arose directly out of the operation of the automobile, and would not have occurred but for the collision. Nonetheless, the Reagans make essentially three contentions as to why Exclusion (g) does not apply to their injuries.

First, they contend that the exclusion applies only to "autos under the control of Boston Rickshaw," and thus does not include the auto that struck the pedicab.

As noted, the endorsement states that the exclusion applies to bodily injury "arising out

of any . . . auto . . . *whether or not owned, maintained, used, rented, leased, hired, loaned,*

*borrowed or entrusted to others or provided to another by any insured*."  (emphasis added).  The

Reagans essentially interpret the phrase "whether or not" as applying only to the word "owned,"

leaving a clause that effectively reads "arising out of any . . . auto . . . whether or not owned [by

Boston Rickshaw], [that is] maintained, used, rented, leased, hired, loaned, borrowed or

entrusted to others or provided to another [by Boston Rickshaw]."

      In support, the Reagans cite to *Minden v. Atain Specialty Ins. Co.*, 788 F.3d 750, 754 (8th

Cir. 2015).  In that case, the district court considered the identical exclusion at issue here and

concluded that it applied only to autos being "operated by or on behalf of [the insured]." *Minden*

*v. Atain Speciality Ins. Co.*, 2013 WL 5106519 at *8 (E.D. Mo. Sept. 12, 2013).  The court

reached that conclusion because, in its view, "[a] layperson . . . could reasonably have thought

that the auto exclusion only excluded coverage for injuries arising out of an auto somehow

connected to the insured."  *Id.*  The Eighth Circuit then affirmed.

      *Minden* certainly supports the Reagans' contention.  However, *Minden* was decided

under Missouri law.  Under Massachusetts law, what a layperson or an insured could reasonably

have thought or expected an exclusion to have covered is an inquiry only to be made "when [the]

policy language is ambiguous," not when "the plain language of [an] exclusion unambiguously

precludes coverage."  *Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d

61, 69 (1st Cir. 2012) (quoting *Finn*, 452 Mass. 697-98)).

      The first question, then, is whether the policy language in question is ambiguous.  Again,

"ambiguity exists when the policy language is susceptible to more than one rational

interpretation."  *Brazas Sporting Arms*, 220 F.3d at 4-5.  Here, the policy language in question

here is susceptible to only one rational interpretation.

First, the Reagans' interpretation runs directly counter to the "series-qualifier principle" of grammatical construction, which provides that a "modifier at the beginning or end of a series of terms modifies all the terms." *United States v. Laraneta*, 700 F.3d 983, 989 (7th Cir. 2012) (citing *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)). That principle, which "reflects the completely ordinary way that people speak and listen, write and read," dictates that the phrase "whether or not" in the exclusion applies to each of the parallel terms that follow it, not just to the word "owned." *Lockhart v. United States*, 136 S. Ct. 958, 970 (2016). And if the phrase "whether or not" applies to each of the terms in the series following it, the only rational interpretation of the exclusion is that it excludes coverage for injuries arising from *any* auto, whether or not that auto is "owned," whether or not that auto is "maintained," whether or not that auto is "used," etc., by Boston Rickshaw.

As a result, the Reagans' interpretation only makes sense if the reader adds words that are not actually present in the policy. And Massachusetts law is clear that a court interpreting an insurance policy must "construe the words of the policy according to the fair meaning of the *language used*." *Jacobs v. U.S. Fid. & Guar. Co.*, 417 Mass. 75, 76 (1994) (citation omitted) (emphasis).

Finally, the Reagans contend that reading the exclusion to apply to injuries arising out of any automobile would be "unreasonable," "absurd," and "incomprehensible," and that a "reasonable insured" that "operat[es] [pedicabs] on [the] public ways" of a busy city such as Boston "would not expect the Auto Exclusion to apply to autos outside of their control and use, or to any autos that strike their pedicabs." (Def. Mem. at 7). Again, however, under Massachusetts law, what a reasonably insured would "expect" an insurance policy to exclude or

cover is only to be considered when the language of the policy is ambiguous.  *See Stolberg*, 680 F.3d at 69.  And again, the language here is unambiguous.

In any event, although "[c]ontracts" under Massachusetts law "are construed . . . to avoid absurd results," interpreting the exclusion as covering injuries caused by an automobile would not be absurd.  *Sunbelt Financial Group, LLC v. North Reading Hardware and Paint Supply, Inc.*, 2009 WL 5910530 at *3 (Mass. Nov. 23, 2009).  There is nothing absurd about a general liability policy that precludes coverage for injuries arising out of automobiles.  Indeed, it is commonplace for insureds to have separate automobile and general liability policies.[3]

In short, the allegations in the underlying lawsuit are "not susceptible to an interpretation that they state a claim covered by [the] policy."  Atain thus has no duty to defend Boston Rickshaw or Dennis Suozzi .  *Scottsdale Ins. Co.*, 561 F.3d at 77.  Because the Reagans' injuries "[arose] . . . out of an auto," the exclusion applies, and the policy does not provide coverage for either defense or indemnity.

**III.**     **Conclusion**

For the foregoing reasons, the motion for judgment on the pleadings of plaintiff Atain Specialty Insurance Co. is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated:  July 2, 2019                    United States District Judge

---

[3] The Reagans also appear to contend that their injuries did not "arise out" of an auto because Suozzi's "unsafe lane change was [an] intervening, independent cause" of their injuries.  But Massachusetts law is clear that simply because "other causes for an injury also may exist does not preclude a determination that the injury arises out of activities excluded under the policy."  *American Home Assur. Co. v. First Specialty Ins. Corp.*, 73 Mass. App. Ct. 1, 6 (2008).